IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES A. GUERRERO,

    Petitioner,                  No. CIV S-08-2335-GGH P

    vs.

D.K. SISTO,

    Respondent.                ORDER

_____/

I. Introduction

       Petitioner is a state prisoner proceeding pro se on an original petition for writ of habeas corpus. Petitioner challenges his 2006 conviction for one count of felony possession of a fictitious note (counterfeit money) with intent to defraud (Cal. Penal Code § 476), felony assault (Cal. Penal Code § 245(a)(1)) and giving false information to a peace officer (Cal. Penal Code § 148.9), a misdemeanor. The jury also found that defendant had four prior strike convictions and that he was sane at the time of the offense. Petitioner was sentenced to two concurrent terms of 25 years to life.

II. Petition

       Petitioner's writ of habeas corpus is quite brief. It contains three claims and is only half a page with six sentences. The court, by reviewing the trial record and the state

1

pleadings and appeals, has attempted to accurately construe petitioner's arguments.

Petitioner raises the following claims in his challenge: 1) the trial court erred by denying petitioner's request to order the prosecution to discover and disclose the criminal history of a defense witness; 2) the trial court erred by refusing to instruct the jury on the prosecution's failure to produce evidence; and 3) the jury was improperly instructed that hands and feet could be construed as deadly weapons. Petition (Pet.) at 6.

After carefully considering the record, the court orders that the petition be denied.

III. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 495, 117 S. Ct. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually

on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

IV. Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> As of May 1, 2006, petitioner had been living in a spare bedroom in the residence of Marc and Michelle Turnovsky. On May 1 petitioner, accompanied by a neighbor and his son, went to a Sears store to purchase a plug for the son's electronic system. Petitioner selected an item of merchandise and gave it to a clerk, asking him to ring it up. As the clerk began scanning the item, petitioner struck him on the side of the head and continued to hit him until he fell, at which point petitioner kicked him and stomped on his head.
>
> Store security personnel saw the attack over the store's video system and called the police. Petitioner, who had been told to remain at the store, fled when the police arrived, but shortly thereafter was taken into custody. Petitioner had no identification and refused to identify himself beyond saying that his name was James.
>
> Officer Kevin Miller transported petitioner to the police station for booking. Miller removed some articles from petitioner's pocket, including a small plastic vial of a type commonly used to store methamphetamine or cocaine, and placed them on the counter. At one point, petitioner "snatched" the vial from the counter and it "disappeared." Petitioner began hyperventilating, grasped his side and bent over as if he was in pain and fell to the ground. Miller found the vial under the counter and it was empty, leading him to believe petitioner may have ingested any contents it may have had.
>
> Petitioner was transported to a hospital where he continued to act as if he was in pain, but refused to be examined. When petitioner's " 'complaints mysteriously ceased,' " he was taken back to the police station where he gave his correct name and was booked. Although petitioner did not have identification, a wallet, or credit cards, he did have three counterfeit $100 bills in his right pants pocket. Petitioner claimed he found the bills in front of the Sears store prior to his entry.
>
> Michelle Turnovsky testified that a few days before petitioner's arrest her husband, Marc, had moved out over a disagreement regarding petitioner's use of drugs and his being in the house. The day of petitioner's arrest, Michelle found papers printed with $100 bills behind the refrigerator near petitioner's bedroom, which she shredded because she did not want them in the house. The police came to her house early the next morning to search petitioner's room and Michelle gave them the shredded bills. Marc had several computers in the home because he was a graphic artist, including one in the room petitioner was using. The police seized the computer from petitioner's bedroom along with other computer equipment and parchment paper which were also in his room.
>
> United States Secret Service Agent James Maples, an expert on counterfeit currency, testified that the three $100 bills were counterfeit, that they had been

4

generated on a computer, and that they were of poor quality.

Petitioner rested without presenting any evidence.

People v. Guerrero, 2008 WL 401412 at 1-2.

V. Argument & Analysis

Claim 1 - Discover Violation of Witnesses' Criminal History

Petitioner contends that the trial court erred by refusing to order the prosecution to discover and turn over the criminal history of a defense witness.[1] Pet. at 6.

The Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment. United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392 (1976); Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). A so-called "Brady" claim contains three essential elements or components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Banks v. Dretke, 540 U.S. 668, 691, 124 S. Ct. 1256, 1272 (2004) (quoting Strickler v. Greene, 527 U.S. 263, 281-282, 119 S. Ct. 1936, 1948 (1999)).

The prosecution violates the constitutional duty of disclosure if his omission is sufficiently significant to result in the denial of the defendant's right to a fair trial. Agurs, 427 U.S. at 106-107, 96 S. Ct. at 2399. The duty exists regardless of whether a specific request has been made by the defense, or whether the suppression was intentional or inadvertent. Id. at 110, 96 S. Ct. at 2400.

Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985). A "reasonable

---

[1] Petitioner was aware that the witness was on parole.

5

probability" is a probability sufficient to undermine confidence in the outcome. Id., S. Ct. At 3383. A mere reasonable possibility is insufficient to establish prejudice. Strickler, 527 U.S. at 291, 119 S. Ct. at 1953.

In denying this claim, the California Court of Appeal, Third District stated:

> Defendant contends the trial court committed reversible error pursuant to section 1054.1, subdivisions (d) and (e) and Brady v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215] when it refused his request to order the prosecutor to obtain and turn over to the defense discovery concerning the criminal history of Marc Turnovsky, a parolee whom the defense had placed on its witness list as a potential witness. We find no error.
>
> Section 1054.1 requires the prosecution to disclose to the defendant "[t]he existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial" (subd. (d)) and "[a]ny exculpatory evidence" (subd. (e)) that the prosecution either possesses or knows is in the possession of one of its investigating agencies. Brady holds that suppression by the prosecution of evidence favorable to an accused upon request violates due process if the material is relevant to either guilt or punishment, irrespective of good or bad faith by the prosecution. ( Brady, supra, 373 U.S. at p. 87.)
>
> "Evidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result ... would have been different.' [Citation.]" ( In re Sassounian (1995) 9 Cal.4th 535, 544.)
>
> Defendant makes the following argument, which he essentially made to the trial court, regarding the materiality of Marc Turnovsky's testimony: "The defense could have questioned [Marc Turnovsky] about his computer equipment and whether he had created counterfeit money that he used to pay [defendant.] If Turnovsky denied such conduct, the defense then could have impeached him with his prior convictions. This would have been exculpatory because it would have created substantial evidence that [defendant] did not create the counterfeit money, as the prosecution contended, and did not have the intent to defraud anyone with it."
>
> What defendant has failed to appreciate in making this argument is that, as the court observed when it denied his request, defendant was not charged with counterfeiting, i.e., producing the fake bills, but was charged only with possessing them with the intent to defraud. Hence, how defendant came into possession of the bills was wholly immaterial. The only relevant question was whether defendant possessed the fake bills with an intent to defraud. That intent was established by defendant's offering the clerk an item of merchandise to ring up, but having no credit cards or money to pay for the item other than the three counterfeit bills he possessed. FN2. Consequently, the court was not required to order disclosure of Marc Turnovsky's rap sheet to defendant.
>
> FN2. During final argument, defense counsel conceded that since "any fool could tell that those bills were counterfeit," no argument would be made regarding a

6

1 | lack of knowledge that the bills were counterfeit.

People v. Guerrero, 2008 WL 401412 at 2.

The California Court of Appeal's opinion is correct. Assuming arguendo, that the defense witness, Marc Turnovsky, had a prior conviction of counterfeiting, petitioner has still failed to demonstrate that this evidence would have been material for the charges against petitioner.[2] It is debatable if this evidence would even have been favorable to the defense. As the California Court of Appeal noted, petitioner was charged with just possession of the counterfeit bills. If Turnovsky had a prior counterfeiting conviction and if he produced the bills and gave them to petitioner, it would not be material either to guilt or punishment for the charge of possession. The trial court did not err in denying petitioner's request nor did the trial court's decision deprive petitioner of a fair trial. The California Court of Appeal's ruling is not in violation of established federal authority and this claim is denied.

### Claim 2 - Discovery Violation of Property Receipt

Petitioner contends that the prosecution's failure to provide a copy of a police property receipt of a small vial found on petitioner at the time of arrest was a discovery violation and prevented petitioner from presenting an adequate insanity defense.

On direct review to the California Court of Appeal, petitioner argued that the trial court erred by refusing to instruct the jury regarding the prosecutions failure to produce the property receipt. The court of appeal denied this claim, stating:

> Defendant contends the trial court committed reversible error when, during the insanity phase of his trial, it refused to instruct the jury that the prosecution had suppressed favorable evidence, namely a property sheet listing the plastic vial that had been taken from him at the police station. He contends the court's refusal to give the instruction was error because the existence of the vial was material to his insanity defense, and the property sheet was relevant because it would corroborate the vial's existence and show that it was taken from defendant. We disagree.
>
> During trial, Officer Miller testified that when defendant was initially taken to the police station for booking, Miller removed a plastic vial from defendant's pocket

---

[2] Petitioner ultimately decided not to call Marc Turnovsky as a witness.

7

|   |   |
|---|---|
| 1 | and placed it on the counter. At some point, defendant grabbed the vial and then fell to the floor and began hyperventilating. The vial was later found by Miller under the counter. |
| 2 | |
| 3 | Defendant's counsel informed the court that he was unaware of the vial's existence until Miller's testimony, and that he had spoken with the prosecutor, who confirmed that the property sheet listing the vial could not be found. Claiming the property sheet constituted "relevant, material, Brady issue matter" for both trial and a potential insanity defense, counsel wanted an instruction given "indicating that the prosecution has suppressed favorable evidence." The court refused to do so. |


1  and placed it on the counter. At some point, defendant grabbed the vial and then fell to the floor and began hyperventilating. The vial was later found by Miller under the counter.

Defendant's counsel informed the court that he was unaware of the vial's existence until Miller's testimony, and that he had spoken with the prosecutor, who confirmed that the property sheet listing the vial could not be found. Claiming the property sheet constituted "relevant, material, Brady issue matter" for both trial and a potential insanity defense, counsel wanted an instruction given "indicating that the prosecution has suppressed favorable evidence." The court refused to do so.

Later, the matter was revisited and counsel offered an instruction on the prosecution's failure to inquire into or locate the property sheet that listed the vial as having been taken from defendant. FN3 The court refused to give the instruction. Among other reasons, it concluded the property sheet would not have aided defendant.

FN3. Defendant's proposed instruction read: "Both the People and the defense must disclose their evidence to the other side before trial within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence or to counter opposing evidence or to receive a fair trial. [¶] The People's attorney, Mark Ott, failed to inquire into or locate a property booking sheet that would have disclosed the items in [defendant's] pocket, including but not limited to an apparent drug receptacle testified to by Officer Miller. [¶] In evaluating the weight and significance of that evidence you may consider the effect, if any, of that late disclosure."

Evidence Code section 210 provides in pertinent part: " 'Relevant evidence' means evidence ... having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

The existence of the vial and its having been taken from defendant at the Tracy police station were not "disputed fact[s]." Indeed, it was the prosecution's witness, Officer Miller, who testified to having taken the vial from defendant at the Tracy police station. Since the property sheet would only have corroborated an undisputed fact, it was not relevant evidence. (Evid . Code, § 210.) Consequently, defendant was not entitled to an instruction sanctioning the prosecution for failure to provide such evidence.

People v. Guerrero, 2008 WL 401412 at 3.

On direct review to the California Supreme Court, petitioner argued that prosecution violated the state evidence code and by doing so petitioner was unable to bolster his insanity defense. Lodged Document #1 at 4-5. The California Supreme Court denied the petition without comment or citation.

\\\\\

In the instant petition, petitioner's entire argument is that the, "D.A. failed to produce exculpatory evidence that supported petitioner[s] in-sanity defense. Petitioner[s] methamphetamine abuse caused him to be legally in-sane, because it exacerbated his mental illness." Pet. at 6.

While it arguable that the property receipt may have tangentially aided petitioner's defense, although this assertion is a stretch, it was neither exculpatory nor impeaching material, as required under Brady. The vial itself was not exculpatory and the police officer testified of its existence, so no impeachment was required. It cannot be said that the missing receipt undermined the confidence in the jury's verdict.

Furthermore, petitioner has not shown that the failure to produce the property receipt hindered his insanity defense. Petitioner's insanity defense was based on petitioner suffering mental disease caused by the long term use of methamphetamine combined with another mental disease or defect. CALJIC 4.02, Reporter's Transcript (RT) at 823-24.[3] The jury was also instructed that temporary mental condition caused by the recent use of drugs is not legal insanity. CALJIC 4.02, RT at 852.

Petitioner presented evidence of past methamphetamine use and the police officer testified that the vial found on petitioner was the type which is commonly used to hold methamphetamine or cocaine. RT at 342, 593-98, 687, 722, 736-39, 781. While, petitioner was not given advanced notice of the vial, it is unclear how this hindered his insanity defense. None of petitioner's pleadings in state court or the instant petition address how knowledge of the vial

---

[3] CALJIC 4.02 states: A person is legally insane if, by reason of mental disease or mental defect, either temporary or permanent, caused in part by the long continued use of drugs, even after the effects of recent use of drugs has worn off, he was incapable at the time of the commission of the crime of either:
    1. Knowing the nature and quality of his act; or
    2. Understanding the nature and quality of his act; or
    3. Distinguishing right from wrong.
However, this defense does not apply when the sole or only basis or causative factor for the mental disease or mental defect is an addiction to, or an abuse of, intoxicating substances.

9

earlier would have bolstered the insanity defense. Nor has petitioner demonstrated any prejudice as a result of the missing property receipt and the alleged effect on his insanity defense. As a result, habeas corpus relief is not warranted.

Claim 3 - Jury Instructions

Petitioner contends that the trial court improperly instructed the jury that hands and feet could be construed as deadly weapons under Cal. Penal Code § 245(a)(1), assault with deadly weapon or force likely to produce great bodily injury.[4]

Respondent argues this is a state law claim not cognizable on federal habeas review. Respondent is correct.

A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68, 112 S.

---

[4] § 245(a)(1) states: Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

Ct. at 480. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480. The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73, 112 S. Ct. at 482.

After reviewing the petition and petitioner's state court pleadings, it is clear that petitioner's argument is strictly a state law claim. As the trial court's ruling did not involve fundamental fairness, this claim is denied.

Accordingly, IT IS HEREBY ORDERED that petitioner's application for a writ of habeas corpus is denied.

Dated: 04/17/09 /s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

ggh: ab
guer2335.hab